# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL NO. 1:09-CR-0211 |
|---|---|---|
| v. | : | (Judge Conner) |
| ROBERT L. NELSON, | : | |
| Defendant | : | |

## MEMORANDUM

Presently before the court is a motion (Doc. 202) to withdraw guilty plea filed *pro se* by defendant Robert Nelson ("Nelson") on December 16, 2010. Nelson seeks to withdraw the plea of guilty he entered on December 6, 2010 claiming that he was misled by the advice provided by prior counsel. The court held a hearing on the matter on February 10, 2011. For the following reasons the motion will be denied.

## I. Background

In the spring of 2009, while Nelson was incarcerated in Dauphin County Prison, he met co-defendant Steven Ray Moreland ("Moreland"). The two engaged in discussions about obtaining and distributing cocaine in the vicinity of Harrisburg, Pennsylvania. (Doc. 210, at 16). Subsequent to Nelson's release from prison, Moreland met another inmate and those two also discussed the possibility of establishing a drug trafficking relationship. (Id.) This inmate later became an informant for the government. (Id.) Moreland told the informant that he had a man on the outside— Nelson—who would be able to sell drugs to the informant's girlfriend. (Id.) Government agents then established an undercover police officer as the informant's girlfriend, and she contacted Nelson to establish the drug

trafficking relationship. (Id. at 16-17). On May 19, June 5 and June 25, 2009, Nelson sold quantities of cocaine and crack cocaine to the undercover officer.[1] (Id. at 17). Other purchases were planned and attempted, but did not come to pass. (Id.)

On July 1, 2009, Nelson and co-defendant Moreland were indicted for possession with intent to distribute and conspiracy to distribute a quantity of cocaine. (Doc. 1). Law enforcement officials apprehended Nelson on July 22, 2009 after a police car chase resulting in a traffic accident. (Doc. 210, at 19). In Nelson's vehicle, officers discovered a 9-millimeter Smith & Wesson pistol. (Id.) Thereafter, on September 23, 2009, Nelson was charged in a three-count superseding indictment with: (1) possession with intent to distribute 50 grams and more of cocaine base and cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (2) conspiracy to distribute 50 grams and more of cocaine base and cocaine in violation of 21 U.S.C. § 846; and (3) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e). (Doc. 28).[2]

During the course of post-arrest proceedings in the above-captioned matter, the court has provided Nelson with three different court-appointed attorneys. (See Docs. 55, 76). Nelson has found fault with all three. His most recent court-

---

[1] The substance provided by Nelson during the June 25, 2009 drug buy turned out to be fake crack cocaine. (Doc. 210, at 17).

[2] Moreland was only charged in counts I and II of the superceding indictment. (Doc. 28). On August 4, 2010, he pled guilty pursuant to a plea agreement with the government to a one count information for misprision of a felon in violation of 18 U.S.C. § 4. (Doc. 141). This court sentenced Moreland to a term of one year probation. (Doc. 201).

appointed counsel, Jeffrey Conrad, Esquire ("Attorney Conrad"), was appointed, removed and designated as standby counsel, reinstated at Nelson's request, then removed for a second time subsequent to disagreements between Attorney Conrad and Nelson that rendered the attorney-client relationship irreparable. (See Docs. 166, 194, 214). The court removed Attorney Conrad for the first time, after a hearing on November 4, 2010. (Doc. 166). The court then designated Nelson *pro se*, set trial for December 6, 2010, and retained Attorney Conrad as standby counsel for purposes of trial. (Doc. 166).

On the morning of December 6, 2010, prior to the start of jury selection for Nelson's trial, Nelson informed the court that he wished to enter a guilty plea and again be represented by Attorney Conrad for such purposes. (See Doc. 210, at 12, 27). The court proceeded to engage Nelson in a lengthy and detailed guilty plea colloquy to assess the voluntariness of Nelson's plea. (See Doc. 210). During the discourse, the court granted Nelson multiple opportunities to confer with Attorney Conrad. (See id. at 6, 7). The court specifically warned Nelson that "[i]f you give up your right to a jury trial you *give up your right to present any defenses* that you may have to these charges as well as the right to appeal any pretrial motions." (Id. at 5 (emphasis added)). After conferring with Attorney Conrad, Nelson indicated his understanding and acceptance of this consequence, and stated he wished to enter a plea of guilty to the superseding indictment. (Id. at 6).

The court again asked Nelson whether he and counsel had discussed potential defenses. (Id. at 7). After another off-the-record discussion with counsel,

3

Nelson affirmed that he and counsel had discussed possible defenses. (Id.) In an abundance of caution, given the pauses, the court inquired of Nelson: "do you feel as though you've had enough time to speak with your attorney about this?" (Id.) Nelson replied, "Yes." (Id.)

The court continued on with its inquiry asking "are you pleading guilty because you are in fact guilty as charged in the three count superseding indictment?" (Id. at 14). Nelson answered in the affirmative. (Id.) The government then proceeded to place on the record the facts it would present in support of the charges. (Id. at 15-21). The court asked Nelson whether he fully admitted to those facts. (Id. at 21). After some clarification, Nelson conceded the facts presented by the government. (Id. at 22-24).[3] The court accepted Nelson's

---

[3] The court made a concerted effort to ensure Nelson understood the facts to which he was admitting:

| | |
|---|---|
| Court: | All right. I just want to make it absolutely clear that you're admitting to the facts that Mr. Consiglio has just placed on the record. He went through and said this is the proof that the government is going to present in support of the charges that you have against you, and he identified specifically what it is you did, the series of transactions that you went through with the detective -- |
| Nelson: | Yes, yes. |
| Court: | -- who was posing as the inmate's girlfriend. |
| Nelson: | Yes. |
| Court: | All of those facts. |
| Nelson: | Yes. |
| Court: | You've clarified one. You maintain your innocence despite the fact that you have a conviction to third degree murder, but you admit to all of the other convictions and all of the other facts that have been placed on the record. |
| Nelson: | Yeah. I pled to them, yes. |

(Doc. 210, at 25-26).

4

guilty plea as a knowing and voluntary plea, supported by an independent factual basis. (Id. at 26).

On December 16, 2010, ten days after entering his guilty plea, Nelson filed *pro se* the present motion (Doc. 202) to withdraw his guilty plea. Nelson asserts that he entered a plea of guilty on the basis of false and misleading advice from Attorney Conrad. (Doc. 202, at 1). Specifically, he states that he entered the plea based upon a promise of a proffer and release (Doc. 211, at 4) and upon Attorney Conrad's advice that Nelson could file ineffective assistance of counsel asserting newly discovered evidence. (Id.) Nelson further contends that his recent review of the Jenks material provided evidence to support a defense of entrapment or outrageous government conduct. (Doc. 202, at 2-3). According to Nelson, Attorney Conrad provided ineffective counsel by failing to discover errors in Nelson's dates of incarceration during the investigation period (id. at 3), which, when corrected, would have supported his defenses. Thus, Nelson claims his guilty plea was the result of ineffective assistance of counsel and he now seeks to withdraw that plea.[4]

The government filed a response (Doc. 209) on January 24, 2011, and the court conducted a hearing on the motion on February 10, 2011. (Doc. 213). The

---

[4] In his brief in support (Doc. 211) of the motion to withdraw guilty plea, Nelson enumerates three grounds on which Attorney Conrad allegedly provided ineffective counsel: (1) Attorney Conrad advised Nelson to plead guilty on a promise without a written agreement; (2) Attorney Conrad did not act on behalf of Nelson and altered evidence to support the government; and (3) Attorney Conrad aided the government by concealing evidence in support of Nelson's claim that his first court-appointed attorney, Thomas Thornton, Esquire, had a non-waivable conflict of interest. (Id. at 5).

5

court proceeded with the hearing in two parts. First, the court engaged Nelson and Attorney Conrad in an *ex parte* hearing and removed Attorney Conrad as Nelson's counsel for the second time. The court then proceeded with the hearing in the presence of the government to ascertain the asserted grounds for Nelson's motion to withdraw his guilty plea. Nelson contends that he is legally innocent of the crimes to which he pled guilty. He claims that he was entrapped and/or the government engaged in outrageous conduct, in essence manufacturing the crime and inducing Nelson to commit it in order to obtain a conviction. (Withdrawal of Guilty Plea Hearing Transcript, at 28, 38). Nelson asserts that he received the Jenks Act material on November 30, 2010, but due to a prison transfer on December 2, 2010, he was without access to the Jenks materials until the day of trial, December 6, 2010. After reviewing the material, subsequent to pleading guilty, Nelson claims it supports his outrageous government misconduct defense. (Id. at 40-41). Thus, he claims he should be permitted to withdraw his guilty plea.

**II.    Discussion**

Rule 11 of the Federal Rules of Criminal Procedure governs the entry, acceptance, and withdrawal of plea agreements and guilty pleas by a criminal defendant. A defendant who pleads guilty has no absolute right to withdraw his plea after it has been entered. See United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001). The defendant may later move to withdraw the guilty plea after the court accepts it, and before the court imposes sentence; however, the defendant shoulders a heavy burden to "show a fair and just reason for requesting the

6

withdrawal." FED. R. CRIM. P. 11(d)(2)(B); see also United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).[5] A defendant may not withdraw his guilty plea at his whim. Brown, 250 F.3d at 815. Shifts in defense strategy, a charge of heart by the defendant, or fears of punishment if the defendant upholds his obligations under a plea agreement are insufficient to warrant withdrawal. See Jones, 336 F.3d at 252; Brown, 250 F.3d at 815.

The court evaluates a motion to withdraw guilty plea in light of the following three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdraw." See United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Jones, 336 F.3d at 252); United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989). The defendant's failure to establish one factor does not necessarily doom a motion to withdraw guilty plea. See United States v. Wilder, 134 F. App'x 527, 528 (3d Cir. 2005) (citing Jones, 336 F.3d at 252-55). The court must balance each of the factors and determine whether there is a fair and just reason for withdrawal of the plea. Id.

---

[5] The decision in Jones and decisions prior to the 2002 Amendments to the Federal Rules of Criminal Procedure invoke the "fair and just reason" analysis pursuant to Rule 32 of the Federal Rules of Criminal Procedure. The substance of this rule regarding withdrawal of guilty pleas was subsequently transferred to Rule 11(d) and (e). See FED. R. CRIM. P. 32 advisory committee notes (2002 Amendments); see also FED. R. CRIM P. 11 advisory committee notes (2002 Amendments).

7

A.  **Assertion of Innocence**

Assertions of innocence must be supported by facts in the record that support a claimed defense. Brown, 250 F.3d at 818. In the instant matter, Nelson does not claim that he is innocent in the sense that he did not commit the crime—he does not claim actual innocence. Instead Nelson contends he is legally innocent—he claims a justification defense: but for the government's allegedly outrageous misconduct and entrapment, Nelson would not have committed the charged offenses. (Withdrawal of Guilty Plea Hr'g. Tr., at 38).

Third Circuit precedent makes clear, however, that bald assertions of legal innocence alone are insufficient to satisfy this factor. "[A] defendant must first assert factual innocence." United States v. Kenley, 299 Fed. App'x 184, 186 (3d Cir. 2008); see also Huff, 873 F.2d at 712 (rejecting a claim of legal innocence when the defendant did not deny that he committed the charged offense); Brown, 250 F.3d at 818 (rejecting Brown's assertions of legal innocence as a basis for withdrawing her plea because she neither argued or presented any evidence that she did not commit the crime); United States v. Fiorello, Crim. A. No. 08-0600 (D.N.J. June 14, 2010) (denying motion to withdraw guilty plea where defendant asserted legal innocence through a statute of limitations defense, but never asserted factual innocence); United States v. Morris, No. Crim. A. 98-133, 1999 WL 675470, at *4-5 (E.D. Pa. Aug. 31, 1999) (stating that assertions of legal innocence need not be considered where defendant waived claims of innocence based on suppression of evidence). But cf. United States v. Groll, 992 F.2d 755, 758 (7th Cir. 1993) (stating that legal innocence

8

is a fair and just reason to withdraw a guilty plea and whether an entrapment defense amounts to a fair and just reason depends on the circumstances of the case). Accordingly, because Nelson did not allege factual innocence, he cannot satisfy this factor.

Assuming *arguendo* that Nelson's assertion of legal innocence is sufficient, Nelson fails to adduce any substantive evidence in support of his defenses. The defense of outrageous government misconduct "is reserved for only the most egregious circumstances." United States v. Waddy, No. Crim. 00-66-1, 2003 WL 22429047, at *8 (E.D. Pa. Sept. 18, 2003). Dismissal of an indictment is warranted when "the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." United States v. Russell, 411 U.S. 423, 431-32 (1973). Government conduct must be fundamentally unfair and "'shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment." Id. at 432 (quoting Kinsella v. United States, 361 U.S. 234, 246 (1960)). A court must undertake consideration of an outrageous government misconduct defense in view of the totality of the circumstances. See United States v. Tobias, 662 F.2d 381, 387 (5th Cir. 1981); United States v. Marshank, 777 F. Supp. 1507, 1523 (N.D. Cal. 1991). The burden or proving outrageous government misconduct is substantial.

An entrapment defense requires proof of two elements: (1) government inducement of the crime, and (2) a lack of predisposition by the defendant to engage in the criminal conduct. Mathews v. United States, 485 U.S. 58, 63 (1988); United

States v. Lakhani, 480 F.3d 171, 179 n.10 (3d Cir. 2007). For entrapment purposes, a confidential informant is an agent of the government. Sherman v. United States, 356 U.S. 369, 376 (1958). The government, however, may use undercover agents to enforce the law. Jacobson v. United States, 503 U.S. 540, 548 (1992). 'It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises.' Id. (quoting Sorrells v. United States, 287 U.S. 435, 441 (1932)).

Nelson asserts a hodgepodge of claims that purportedly amount to a showing of outrageous government misconduct and entrapment. The court will summarize these assertions to the extent possible, but certain aspects of Nelson's version of his "victimization" can best be explained by quoting the record.

Nelson's version begins in March 2009 when he was on work release in Dauphin County. He contends that the government targeted him for this crime with the help of his former acquaintance, Charles Dillard ("Dillard"). Nelson claims that Dillard is the government's initial informant in this matter. According to Nelson, the government initiated false misconduct charges against him while he was on work release so that he would be returned to prison. This action accomplished the government's alleged goal of establishing a relationship between Nelson and his co-defendant Steven Ray Moreland. Nelson claims that co-

defendant Moreland is actually a second government informant used to conceal the connection to Dillard. Nelson explains:

> Mr. Steven Ray Moreland was committed to Dauphin Co. Prison on March 18, 2009 the same day the defendant spoke to "Mr. Charles Dillard" and one day prior to the false misconduct and other claims at the work release center which were eventually used to move the defendant from work release the prison gen. population.
>
> Defendant was moved from A-day room to cell A 2-10 on 3-31-2009 and the occupants in A 2-11 were moved out on 4-2-2009 and Mr. Steven Ray Moreland was moved into cell A 2-11 on 4-2-2009, indicating there was no coincidence.
>
> Defendants dates were wrong as to the dates indicated as the dates of phone conversations with the informant "Charles Dillard," but the defendant asserts Mr. Dillard could have been calling from several numbers, and the calls do match up.

(Doc. 202 ¶¶ 6-8). After being released from Dauphin County Prison, Nelson continues: "[Moreland] starts writing me letters once I'm released about drugs. He sends me drugs through a third party after building me up to think that he was legitimate and he was going to invest in my business an my legal business he sends me drugs to give to his alleged coworker, which happens to be Agent Dawn Kale." (Withdrawal of Guilty Plea Hr'g. Tr., at 29). Subsequent to the drug deals, on July 1, 2009, the government indicted Nelson. Officials arrested Nelson on July 22, 2009, according to Nelson, with the help of Dillard, who contacted Nelson immediately prior to his arrest to ascertain his location.

> On July 23rd 2009 The District Court appointed "Mr. Thomas A Thornton," of the Federal Public defenders office to represent the defendant. After questionable representation of "Mr. Thomas A. Thornton," as to the facts of the case and the motives of counsel. The defendant realized "Mr. Thomas A. Thornton" was the same attorney

11

> whom represented "Mr. Charles Dillard" and "Mr. Charles Dillard," is the initiating informant in the instant case."

(Doc. 211, at 1). Apparently, the government arranged for Attorney Thornton to represent Nelson in order to "assist the government by way of false proffer to obtain evidence to use against the defendant[']s, defense of entrapment." (Doc. 186, at 1).

> [I]t was "Thomas A. Thornton," and "Charles Dillard" whom were responsible for the defendant being targeted for Investigation, and apprehension in the instant case and further "Mr. Thomas A. Thornton" filed for continuances by misrepresentation to allow the Gov. to file for untimely Supersedes Indictment which prejudice the defendant.

(Doc. 211, at 3). Nelson asserts that "[t]he gov. use of Mr. Thornton, to obtain incriminating evidence from the def. to be used to impeach his entrapment defense rendered his counsel's assistance ineffective from it[]s inception and constitute[]s Gov. interference in the attorney-client relationship." (Doc. 186, at 1).

Nelson's other two appointed attorneys were also apparently working for the government. According to Nelson, "each Counsel appointed by the district Court has in fact functioned as a prosecuting defense attorney to aid the government in the prosecution of the defendant." (Doc. 211, at 3). Attorney Conrad allegedly altered "phone records by a computer process known as pasting, by setting-up the records on spread sheet for altering, then submitted a copy of the altered spread sheet information to this court to held the government conceal its outrageous conduct." (Doc. 207, at 1). Thus, according to Nelson, from March 2009 to present, the government has targeted him and continues to interfere with his defense against the charges at every step of these proceedings.

12

Nelson's wild assertions of some deep-rooted government conspiracy to "get him" are unfounded. The government stated on the record that Charles Dillard has nothing to do with this case. (See Sept. 13, 2010 Hr'g. Tr., at 5 (wherein Assistant U.S. Attorney Michael Consiglio stated that "the government's observation of Mr. Dillard had nothing to do with this case at all")). Attorney Conrad testified under oath that he investigated Attorney Thornton and Attorney Thornton has never represented a Charles Dillard. (See Hrg. Trans. Sept. 13, 2010, at 16-18). Even if this court accepts that Charles Dillard is somehow involved as an informant in this matter, the government's use of an informant, standing alone, does not constitute outrageous government misconduct or entrapment. See Waddy, 2003 WL 22429047, at *10 (rejecting an ineffective assistance of counsel claim by defendant alleging counsel failed to investigate entrapment and outrageous government conduct defenses and stating that even if the government enlisted and installed the confidential informant that action did not amount to outrageous government conduct). Moreover, Attorney Thornton's alleged conflict is completely irrelevant to a defense of entrapment as Nelson had already committed the crimes at issue and was indicted before Thornton's appointment as his counsel. Accordingly, Nelson's bald assertions of legal innocence are a house of cards that fall quickly in the breeze of record scrutiny.

**B.    Strength of Nelson's Reasons for Withdrawing his Plea**

Nelson's asserted reasons for withdrawing his guilty plea are that his counsel was ineffective, and he had insufficient time to review Jenks Act materials. The

intelligent and voluntary nature of a plea is negated when counsel provides a defendant with ineffective assistance. See United States v. Smith, Criminal No. 1:05-CR-0329, 2006 WL 2645153, at *4 (M.D. Pa. Sept. 14, 2006) (citing Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)). A court may permit a defendant to withdraw his guilty plea on the basis of ineffective assistance of counsel when a defendant establishes that: (1) "his attorney's advice was under all the circumstances unreasonable under prevailing professional norms," and (2) "he suffered 'sufficient prejudice' from his counsel's errors." Jones, 336 F.3d at 253-54 (citing United States v. Day, 969 F.2d 39, 42, 45 (3d Cir. 1992) and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Nelson was proceeding *pro se* when he entered the courtroom for jury trial on Monday, December 6, 2010. As is his prerogative, Nelson chose to enter a plea of guilty to the superceding indictment rather than proceed with trial, and he requested the assistance of standby counsel to effect that outcome. Thus, Nelson's claims of ineffective assistance of counsel as to the entry of his plea are confined to the morning of December 6, 2010 when Nelson requested that Attorney Conrad represent him for purposes of entering a guilty plea. In support of his ineffective assistance claim, Nelson asserts that Attorney Conrad erroneously informed him that all his pretrial motions had been denied. Attorney Conrad's information was not erroneous. I disposed of all of Nelson's pretrial motions by December 3, 2010, the Friday immediately preceding the week of trial. Attorney Conrad did not mislead Nelson. The docket clearly reflects that all pretrial motions were disposed

14

of by December 3, 2010. There is simply no credible evidence to support Nelson's contentions that Attorney Conrad's representation was inadequate (either during the plea, or during the prior representation period for that matter), or that Attorney Conrad's representation prejudiced Nelson in any way.

Nelson also contends that he did not have access to the <u>Jenks</u> Act material for the three days prior to his trial, and he was unable to review the material to support his claimed defenses. He claims that, <u>after</u> pleading guilty, he had the opportunity to sort through this documentation and that it supports his theory of outrageous government misconduct. Nelson states: "[h]ad I had access to [the <u>Jenks</u> Act material] over that weekend then I would not have come in here and pled guilty because everything that I had alleged in my prior motion to dismiss the indictment is right here in this exactly as I alleged it." (Withdrawal of Guilty Plea Hr'g. Tr., at 16). Importantly, Nelson never advised the court on the morning of December 6, 2010 that he did not have sufficient time to thoroughly review the <u>Jenks</u> material and that he needed additional time. (<u>See</u> Doc. 210).[6] Therefore, the

---

[6] To the contrary, he following discussion occurred during the change of plea hearing:

| | |
|---|---|
| Atty Conrad: | Your Honor, I can note for the record that we have discussed various defenses. . . . We have discussed various defenses that he would have to this case, and the fact that there is a defense available doesn't mean there's facts to support that kind of defense, and we've discussed that. |
| Court: | All right. Is that accurate, Mr. Nelson? |
| Nelson: | Yes, sir. |
| . . . | |
| Court: | Are you doing this of your own free will? |

15

court finds the strength of Nelson's reasons to withdraw his guilty plea to be less than substantial.

### C. **Prejudice to the Government**

When a defendant fails to satisfy the other factors to support a withdrawal of a guilty plea, the government need not show prejudice. Jones, 336 F.3d at 255 (citing United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995)). Nonetheless, in the instant matter the government asserts that permitting Nelson to withdraw his guilty plea would be prejudicial to it. The government claims that it "had gone to great lengths to prepare witnesses, exhibits, and travel arrangements for a DEA chemist from out of state," and that many law enforcement officials were present and ready to testify, having taken leave from other duties. (Doc. 209, at 7). The government contends that this effort and expense will have to be redone. The government further asserts that it will waste judicial resources as Nelson has already admitted to the crimes, and, does not claim actual innocence. (Id.) Nevertheless, the government indicates that no evidence has been lost and that witnesses can be reassembled. (Withdrawal of Guilty Plea Hr'g. Tr., at 47). Although Nelson stated that he would stipulate to specialists who would have to be brought in from out of state (see id. at 48), the government would still be prejudiced. In United States v. Crowley, 529 F.2d 1066 (3d Cir. 1976), the Third Circuit noted the

---

    Nelson:          Yes.

(Doc. 210, at 7-8). At no time did Nelson indicate that he required additional time.

prejudice to the government "through defendant's entering the plea on the day of trial . . . when jurors, witnesses and court personnel had been assembled for trial" as a relevant factor. Id. at 1072. Citing this factor, among others, the court concluded that granting the defendant's motion to withdraw his guilty plea would not have been fair and just. Id. Balancing all three factors, the court finds that they do not weigh in favor of permitting Nelson to withdraw his guilty plea.

### III. Conclusion

Nelson has failed to assert a "fair and just" reason to withdraw his guilty plea. Nelson was well aware of his alleged defenses and made a calculated decision to plead guilty on the day of trial after being informed that his plea waived any possible defenses. He does not assert his actual innocence and the court does not find his reasons for wanting to withdraw his guilty plea particularly strong. Nor does the court find that Attorney Conrad provided ineffective assistance of counsel on the day of the plea. The court further finds that the government would be prejudiced by allowing Nelson to withdraw his guilty plea. Nelson's motion (Doc. 202) to withdraw his guilty plea is therefore denied.

An appropriate order follows.

   S/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated:      March 11, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:09-CR-0211** |
| v. | : | **(Judge Conner)** |
| **ROBERT L. NELSON,** | : | |
| Defendant | : | |

## ORDER

AND NOW, this 11th day of March, 2011, upon consideration of the motion (Doc. 202) to withdraw guilty plea filed by defendant Robert Nelson, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 202) is DENIED.

                                                        S/ Christopher C. Conner
                                                        CHRISTOPHER C. CONNER
                                                        United States District Judge