# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:09-CR-211 |
| v. | : (Chief Judge Conner) |
| **ROBERT NELSON,** | : |
| **Defendant** | : |

## **MEMORANDUM**

Defendant Robert Nelson ("Nelson") pled guilty in December of 2010 to charges of conspiring and possessing with intent to distribute cocaine base and cocaine, and possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e). Because Nelson had three or more qualifying prior convictions under the Armed Career Criminal Act ("ACCA" or "the Act"), his statutory maximum sentencing exposure was enhanced to life imprisonment. See 18 U.S.C. § 924(e). The court sentenced Nelson to three concurrent terms of 235 months' imprisonment on September 30, 2011. (Doc. 280).

Nelson now moves the court to vacate his 235-month sentence in light of the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), which invalidated the ACCA's residual clause as unconstitutionally vague. (Doc. 328). For the reasons that follow, the court will grant Nelson's motion and schedule resentencing forthwith.

I. **Factual Background & Procedural History**

On July 1, 2009, a federal grand jury sitting in Harrisburg, Pennsylvania, returned a two-count indictment charging Nelson and codefendant Steven Ray Moreland with possession with intent to distribute (Count I) and conspiracy to distribute (Count II) fifty grams and more of cocaine base and cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. 1). The grand jury returned a superseding indictment on September 23, 2009, restating Counts I and II against Nelson and Moreland and further charging Nelson with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e), to wit: a Smith and Wesson 9 millimeter pistol (Count III). (Doc. 28).

Nelson entered a plea of guilty, without a written agreement, to all three counts of the superseding indictment. (See Doc. 195). During the guilty plea proceeding, the court advised Nelson that his guilty plea would carry, *inter alia*, a fifteen year mandatory minimum term of imprisonment pursuant to the ACCA.[1] (Doc. 210 at 9:6-10:6). The court further advised that the plea would increase the maximum sentencing exposure on Count III from ten years to life imprisonment. (See id. at 9:20-10:6). Nelson stated that he understood his sentencing exposure, (see id.), and the court accepted his plea of guilty to Counts I, II, and III. (Doc. 195).

---

[1] The court also advised Nelson that Counts I and II carried mandatory minimum terms of ten years' imprisonment. (See Doc. 210 at 9:6-20). Prior to sentencing, as a result of the Fair Sentencing Act of 2010, the applicable mandatory minimum sentences on Counts I and II were reduced to five years' imprisonment, respectively. See Pub. L. No. 111-220, 124 Stat. 2372 (codified as amended in various sections of 21 U.S.C.).

The United States Probation Office prepared a presentence report ("PSR") which calculated Nelson's offense level and criminal history category pursuant to the United States Sentencing Guidelines. The PSR grouped all three counts and reflected an initial offense level of 30 and criminal history category of III. (See PSR ¶¶ 20, 26, 42). Because Count III implicated the ACCA, the PSR recommended application of the Guidelines' armed career criminal provisions. (Id. ¶¶ 29, 42). Specifically, the PSR determined that Nelson was an armed career criminal who had "used or possessed a firearm . . . in connection with crimes of violence and a controlled substance offense," subjecting him to an increased offense level of 34 and enhanced criminal history category of VI under Guidelines § 4B1.4(b)(3)(A) and (c)(2). (Id. ¶¶ 29, 42). The report established a Guidelines range of 262 to 327 months. (Id. ¶ 60).

At sentencing on September 30, 2011, the court sustained Nelson's objection to application of the enhanced armed career criminal provision under Guidelines § 4B1.4(b)(3)(A) and (c)(2). (Doc. 282 at 61:21-66:19). The court instead designated Nelson an armed career criminal under the otherwise applicable provisions of the Guidelines. (See id. at 67:14-25); see also U.S.S.G. § 4B1.4(b)(3)(B), (c)(1). With an adjusted offense level of 33 and criminal history category of IV, Nelson's Guidelines range at sentencing was 188 to 235 months. (Id. at 67:14-68:4). The court sentenced Nelson to 235 months' imprisonment on each of Counts I, II, and III, to be served concurrently. (Doc. 280). The Third Circuit affirmed Nelson's judgment on direct appeal on October 13, 2012. United States v. Nelson, 488 F. App'x 552 (3d Cir. 2012).

Nelson thereafter filed his first motion (Doc. 288) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. He raised claims of judicial and prosecutorial misconduct in addition to charging ineffective assistance of trial and appellate counsel. The court denied Nelson's motion by memorandum and order (Docs. 313-14) dated December 12, 2013. The Third Circuit denied Nelson's request for a certificate of appealability. (See Docs. 315, 317). On October 30, 2015, Nelson filed a "memorandum of law" seeking *vacatur* of his conviction and immediate release from custody on the basis that his conviction was the result of "fraud on the court." (Doc. 320). In deference to his *pro se* status, we construed Nelson's filing as a motion pursuant to § 2255 and denied same as an improper second or successive petition filed without prior authorization by the Third Circuit. (Doc. 321); see 28 U.S.C. §§ 2244(3)(A), 2255(h). Nelson appealed, (Doc. 323), and the Third Circuit again declined to issue a certificate of appealability. (Doc. 326).

Nelson filed the instant motion (Doc. 328) to vacate his sentence on June 24, 2016, through appointed counsel. We issued a briefing schedule, (Doc. 333), and thereafter directed the parties to file supplemental briefing addressing the impact of intervening Supreme Court and Third Circuit decisional law on Nelson's ACCA status. (Doc. 340). Nelson's motion is fully briefed, (see Docs. 328, 336-37, 341, 345-46) and ripe for disposition.

## II. **Standard of Review**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. 28 U.S.C. § 2255. Courts may afford relief under § 2255 on a number of grounds including, *inter alia*, "that the

4

sentence was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a); see also R. GOVERNING § 2255 CASES 1(a). The statute provides that, as a remedy for an unlawfully-imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**III. Discussion**

The ACCA compels a mandatory minimum sentence of fifteen years' imprisonment for defendants convicted under 18 U.S.C. § 922(g) who have acquired three prior, adult convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The Act defines the term "violent felony" to include any offense punishable by imprisonment for more than one year which falls within one of three categories: (1) crimes having "as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) crimes of burglary, arson, or extortion, or which involve use of explosives; and (3) crimes which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(i)-(ii). Courts refer to the first clause as the "force clause," the second as the "enumerated offenses clause," and the third as the "residual clause."

The Supreme Court in Johnson invalidated only the residual clause of the ACCA as unconstitutionally vague. Johnson, 135 S. Ct. at 2557. Consequently, a defendant may still qualify for an enhanced sentence under the ACCA if they have three or more prior, adult convictions which qualify under the force clause or the

5

enumerated offenses clause. Id. at 2563. Johnson is retroactively applicable to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1265 (2016).

Nelson contends that, in the wake of Johnson, his 235-month sentence at Count III violates the Constitution and laws of the United States and is in excess of the otherwise-applicable maximum sentence of ten years. (Doc. 328 at 3-4). Nelson further asserts that his erroneous designation as an armed career criminal under Guidelines § 4B1.4(b)(3)(B) and (c)(3) increased his Guidelines sentencing exposure and deprived him the benefit of a retroactive reduction under Amendment 782. (See Doc. 328 at 3 & n.4). Nelson concedes that his prior conviction for unlawful delivery of cocaine and marijuana is a "serious drug offense" as defined in 18 U.S.C. § 924(e)(2)(A) and constitutes the first of three ACCA strikes against him. (See Doc. 328 at 3 n.3). He maintains, however, that neither of his remaining convictions—to wit, a 1980 conviction for burglary, and a 1991 conviction for robbery, involuntary manslaughter, and third-degree murder—is a predicate offense under the vestigial clauses of the ACCA. (Id. at 7-18).

Before we turn to the merits of Nelson's motion, we must address several threshold issues raised by the government: *first*, whether the court lacks jurisdiction to entertain Nelson's second or successive § 2255 motion; and *second*, whether Nelson has procedurally defaulted any challenge to his ACCA designation. (See Doc. 336 at 11-16, 34-37).

### A. Second or Successive Motion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") strengthened the procedural and substantive perquisites for second or successive

motions under 28 U.S.C. § 2255.  See Goldblum v. Klem, 510 F.3d 204, 216 (3d Cir. 2007).  The AEDPA contemplates only two types of second or successive motions: (1) those based on newly discovered evidence sufficiently undermining guilt, and (2) those grounded in "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h).

Before filing a motion with the district court, a defendant must first move in the appropriate court of appeals for an order authorizing a second or successive motion.  See 28 U.S.C. §§ 2244(b)(3)(C), 2255(h).  The court of appeals conducts a "preliminary examination" to determine whether the procedural requirements of 28 U.S.C. § 2244(b)(3)(C) are met.  See Goldblum, 510 F.3d at 217-20.  Once the court of appeals resolves that the defendant has made a "*prima facie* showing" as to the statute's requirements, the defendant may file the second or successive petition in the district court.  See 28 U.S.C. § 2244(b)(3)(C).

Circuit court authorization, however, is not synonymous with district court jurisdiction.  Authorization evinces only that a defendant has made "a sufficient showing of *possible* merit to warrant a fuller exploration by the district court." Goldblum, 510 F.3d at 219 (emphasis added) (quoting Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997)).  The district court must independently satisfy itself that the defendant fulfills the jurisdictional requirements of § 2255(h).  See 28 U.S.C. § 2244(b)(4); see also Goldblum, 510 F.3d at 220.  Hence, the ultimate gatekeeping determination rests with the district court.

Nelson properly sought and obtained leave from the Third Circuit Court of Appeals to file the instant motion, (Doc. 332), which is his third under 28 U.S.C. § 2255. (See Docs. 288, 320). Specifically, on July 6, 2016, the Third Circuit issued an order finding that in light of the Supreme Court's decisions in Johnson and Welch, Nelson "has made a *prima facie* showing that his proposed § 2255 motion contains a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." (Doc. 332).

The government acknowledges the Third Circuit's preliminary finding but rejoins that Nelson's instant argument was not "previously unavailable" to him as required to surmount § 2255(h). (Doc. 336 at 14-16). Quoting from In re Moore, 830 F.3d 1268 (11th Cir. 2016), the government urges that a defendant must "prove[] that he was sentenced using the residual clause" before he may invoke Johnson. (Doc. 336 at 15-16 (quoting In re Moore, 800 F.3d at 1273)). The Eleventh Circuit in Moore authorized a defendant's second or successive appeal on the basis that it was "unclear" whether the district court had relied on the residual clause at sentencing. In re Moore, 800 F.3d at 1272. In *dicta*, the court commented that if the district court could not discern with certainty whether the residual clause "was used in sentencing and affected the final sentence," it must deny the defendant's motion. Id. at 1273. The government appears to contend that because Nelson cannot prove he was sentenced under the residual clause, and because he did not challenge his convictions under the force clause or enumerated offenses clause at the time of sentencing, he cannot now avail himself of Johnson's retroactive rule. (Doc. 336 at 14-16).

8

The government's reliance on Moore ignores the diametric result reached by a different Eleventh Circuit panel just six days later in In re Chance, 831 F.3d 1335 (11th Cir. 2016). The Chance panel sharply criticized Moore for placing the burden on defendants to prove reliance on the residual clause during "potentially decades-old" proceedings. Id. at 1340. Per Chance, whether the sentencing record contains the phrase "residual clause," "elements clause," or "force clause" is of no moment; what matters is that the ACCA may no longer authorize the defendant's enhanced sentence following Johnson. Id. at 1341.

The government also disregards a developing judicial accord—including a consensus in this circuit—holding that if a sentencing judge *may* have applied the residual clause to enhance a defendant's sentence, the defendant may rely on Johnson.[2] These decisions reason that it would be unfair to penalize defendants for an ambiguous record when no authority required judges to make the distinction at sentencing prior to Johnson. See, e.g., Winston, 850 F.3d at 682; Wilson, 2017 WL 1383644, at *3-4 & n.9. To hold otherwise would invite the "absurd result" of

---

[2] See, e.g., United States v. Geozos, 870 F.3d 890, 896 (9th Cir. 2017); United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017); United States v. Ballard, No. 03-810, 2017 WL 2935725, at *4 (E.D. Pa. July 10, 2017); United States v. Eskridge, No. 08-20153, 2017 WL 1106173, at *4 (D. Kan. Mar. 23, 2017); United States v. Booker, No. 04-CR-49, 2017 WL 829094, at *3-4 (D.D.C. Mar. 2, 2017); Shabazz v. United States, No. 16-CV-1083, 2017 WL 27394, at *5-6 (D. Conn. Jan. 3, 2017); Givens v. United States, No. 16-CV-1143, 2016 WL 7242162, at *4 (E.D. Mo. Dec. 15, 2016); United States v. Wolf, No. 04-CR-347, 2016 WL 6433151, at *2-4 (M.D. Pa. Oct. 31, 2016) (Caldwell, J.); United States v. Ladwig, 192 F. Supp. 3d 1153, 1158-59 (E.D. Wash. 2016). Courts have rejected a variation of the government's argument in the timeliness context for initial § 2255 motions as well. See, e.g., United States v. Wilson, No. 96-157, 2017 WL 1383644, at *3-4 & n.9, __ F. Supp. 3d __ (D.D.C. Apr. 18, 2017); United States v. Brown, No. 09-358, 2017 WL 1383640, at *3, __ F. Supp. 3d __ (D.D.C. Apr. 12, 2017); United States v. Mitchell, 218 F. Supp. 3d 360, 366 (M.D. Pa. 2016) (Conner, C.J.).

anchoring a defendant's prospect for relief to chance remarks by the sentencing court, Booker, 2017 WL 829094, at *4, rendering relief under Johnson "virtually impossible to obtain." Shabazz, 2017 WL 27394, at *5. The government supplies no reason to depart from this robust and compelling authority. We hold that when the record is unclear as to which ACCA clause supported an enhanced sentence, the defendant satisfies the gatekeeping requirements of §§ 2244(b)(4) and 2255(h) by showing that his prior convictions may have fallen under the now-void residual clause.

The government also suggests *passim* that, even if Johnson opened the door for Nelson's second or successive motion, his claims are nonetheless untimely because they principally rely on the Supreme Court's earlier and non-retroactive decisions in Johnson v. United States, 559 U.S. 133 (2010) ("Johnson (2010)") and Descamps v. United States, 570 U.S. __, 133 S. Ct. 2276 (2013). (See Doc. 336 at 17-18). That Nelson's claim engages with Johnson (2010) and Descamps does not preclude his instant motion.[3] Prior to 2015, any conviction successfully challenged under ACCA's substantive clauses would have been swept up by its residual clause. See Mitchell, 218 F. Supp. 3d at 366 & n.1 (collecting cases). Accordingly, it is the Supreme Court's most recent Johnson decision that unlocked Nelson's present

---

[3] See, e.g., Chance, 831 F.3d at 1341 n.5; Wilson, 2017 WL 1383644, at *4; Brown, 2017 WL 1383640, at *2-3; Booker, 2017 WL 829094, at *4; Shabazz, 2017 WL 27394, at *5-6, *10-11; Diaz v. United States, No. 16-CV-323, 2016 WL 4524785, at *5 (W.D.N.Y. Aug. 30, 2016); United States v. Harris, 205 F. Supp. 3d 651, 665 (M.D. Pa. 2016) (Caldwell, J.) (collecting cases); Ladwig, 192 F. Supp. 3d at 1159-60; United States v. Winston, No. 01-CR-79, 2016 WL 2757451, at *2-3 (W.D. Va. May 11, 2016), vacated on other grounds, 850 F.3d 677. But see Leone v. United States, 203 F. Supp. 3d 1167, 1179-80 (S.D. Fla. 2016).

claims, and upon which this court's jurisdiction is based. We conclude that Nelson satisfies the procedural requirements of §§ 2244(b)(4) and 2255(h).

### B. Procedural Default

The government next contends that Nelson's claim is procedurally defaulted. (See Doc. 336 at 34-37). When a defendant fails to raise a claim on direct appeal, he "procedurally defaults" that claim for purposes of collateral review. United States v. Bousley, 523 U.S. 614, 622 (1998). A defendant may surmount a default by showing cause, as well as resulting prejudice should the default be given preclusive effect. United States v. Doe, 810 F.3d 132, 153 (3d Cir. 2015). Cause has been found to exist when a "constitutional claim is so novel that its legal basis is not reasonably available to counsel" in earlier proceedings. Bousley, 523 U.S. at 622 (quoting Reed v. Ross, 468 U.S. 1, 16 (1984)). In Reed, the Supreme Court specified three circumstances that trigger a novelty exemption: (1) the Court overrules one of its precedents; (2) the Court overturns a "longstanding and widespread [and] near-unanimous body of lower court authority"; or (3) the Court rebukes a practice that its prior opinions "arguably" sanction. Reed, 468 U.S. at 17 (citations omitted).

At the time of Nelson's sentencing on September 30, 2011, the Supreme Court had twice affirmed the constitutionality of the residual clause.[4] In both

---

[4] Nelson cites to United States v. Blair, 734 F.3d 218 (3d Cir. 2013), and United States v. Gibbs, 656 F.3d 180 (3d Cir. 2011), as support for his contention that earlier vagueness challenges to the residual clause would have been futile. Neither case supports Nelson's claim of futility. Blair was decided *after* Nelson's sentence was imposed, and Gibbs rejected a vagueness challenge to ACCA's definition of "serious drug offense," not the residual clause. See Gibbs, 656 F.3d at 188-89.

11

cases, the Court rejected entreaties from the late Justice Scalia to "admit that ACCA's residual provision is a drafting failure and declare it void for vagueness." Sykes v. United States, 564 U.S. 1, 28 (Scalia, J., dissenting); James v. United States, 550 U.S. 192, 230 (Scalia, J., dissenting). Few challenges to the ACCA achieved even a modicum of success prior to Johnson. See Mitchell, 218 F. Supp. 3d at 367 n.2 (citations omitted). When it invalidated the residual clause in Johnson, the Supreme Court expressly overruled its "contrary holdings" in James and Sykes. Johnson, 135 S. Ct. at 2563. We have previously held that the hereinabove cited case law effected a jurisprudential barricade to any successful challenge to the residual clause. See Mitchell, 218 F. Supp. 3d at 366-68 (collecting cases); see also El Amin v. United States, No. 1:05-CR-67, 2017 WL 4233090, at *3 (M.D. Pa. Sept. 25, 2017) (Kane, J.) (same). Nelson has established cause to overcome procedural default.

The government remonstrates that, assuming Nelson can show cause, he cannot establish prejudice "because his sentence was based on a sentencing guideline determination." (Doc. 336 at 35; see also Doc. 345 at 32-45). Any direct challenge to the Sentencing Guidelines themselves is foreclosed by the Supreme Court's decision in Beckles v. United States, 580 U.S. __, 137 S. Ct. 886 (2017), which declined to extend Johnson to the identical residual clause in the Guidelines career offender provisions. See id. at 897. But Nelson's claimed prejudice does not stem from the Guidelines—it flows from the ACCA itself. If Nelson achieves *vacatur* of his ACCA conviction and sentence, his statutory maximum sentence for Count III will be reduced to ten years. See 18 U.S.C. § 924(a)(2). His current sentence of 235

12

months' imprisonment on Count III would thus exceed the statutory maximum term, constituting prejudice sufficient to excuse default.

## C. Merits & Relief

We proceed to the merits of Nelson's Johnson arguments. Nelson does not dispute that he has one qualifying predicate offense in his record—a 1986 drug conviction. (Doc. 328 at 3 n.3; Doc. 341 at 4-5; Doc. 345 at 4; see PSR ¶ 36). At sentencing, Nelson's ACCA status was supported by two additional felony convictions—a 1980 conviction for burglary and a 1991 conviction for robbery, involuntary manslaughter, and third-degree murder.[5] The dispositive inquiry is whether the remaining convictions qualify as violent felonies under the ACCA's enumerated offense or force clauses. If the answer for either conviction is no, Nelson's enhanced sentence is not substantiated by the ACCA.

Our analysis begins and ends with Nelson's burglary conviction. The Third Circuit recently held that burglary under Pennsylvania law is not a crime of violence under the Guidelines' career offender provisions. See United States v. Steiner, 847 F.3d 103, 117-20 (3d Cir. 2017). The version of the Pennsylvania burglary statute at issue in Steiner is identical in all material respects to the iteration of the statute undergirding Nelson's 1980 conviction. Compare id. at 118 (quoting 18 PA. CONS. STAT. § 3502(a) (1992)) with 18 PA. CONS. STAT. § 3502(a) (1980). This precedent compels the conclusion that Nelson's burglary conviction is

---

[5] The ACCA counts separately offenses which are "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Nelson's felony conviction for robbery, involuntary manslaughter, and third-degree murder arose from a single incident and thus counts as a single offense for purposes of the ACCA. (See Doc. 341 at 5; Doc. 345 at 6-7 & n.6); see also 18 U.S.C. § 924(e)(1).

13

not a violent felony under the ACCA's enumerated offenses clause. See El Amin, 2017 WL 4233090, at *3; Wolf, 2017 WL 736809, at *3 (quoting Harris, 205 F. Supp. 3d at 667); (see also Doc. 345 at 4-5). Nor does Nelson's conviction qualify under the ACCA's force clause. Burglary is an offense against property which does not have as an element "the use, attempted use, or threatened use of physical force *against the person* of another." 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added); see also United States v. Herrold, No. 4:91-CR-71, 2016 WL 7374884, at *2 (M.D. Pa. Dec. 20, 2016) (Jones, J.).

The government appropriately concedes in its supplemental briefing that, in view of this decisional law, Nelson's enhanced sentence is not supported by the requisite three predicate convictions. (See Doc. 345 at 2, 4-5). We agree. Assuming *arguendo* that the 1991 conviction for robbery, involuntary manslaughter, and third-degree murder separately constitute a violent felony, Nelson would have at most *two* ACCA predicate offenses. Hence, Nelson no longer qualifies for the enhanced sentencing provisions of the ACCA, and his sentence of 235 months' imprisonment on Count III is in excess of the otherwise-applicable statutory maximum sentence of ten years. See 18 U.S.C. § 924(a)(2).

### D.     "Custody"

Notwithstanding its merits concession, the government disputes whether Nelson is entitled to relief under Section 2255. (Doc. 345 at 4-5). The government first contends that Nelson's motion is really a precluded attack on the Sentencing Guidelines themselves, an argument this court rejected *supra*. The government then raises a final salvo in opposition to Nelson's motion, to wit: that Section 2255

relief is unavailable to Nelson because, regardless of the fate of his ACCA sentence, Nelson is serving and will continue to serve 235-month concurrent sentences on Counts I and II.

The government relies on the "concurrent sentence doctrine" to support its argument, citing the Third Circuit's recent decision in United States v. Ross, 801 F.3d 374 (3d Cir. 2015). (Doc. 345 at 28-32). The doctrine allows federal courts "to pretermit decision about convictions producing concurrent sentences, when the extra convictions do not have cumulative effects." Ross, 801 F.3d at 381 (quoting Ryan v. United States, 688 F.3d 845, 849 (7th Cir. 2012)). In Ross, the Third Circuit found Section 2255 relief to be unavailable when the sentence imposed for the challenged conviction (possession of a machine gun in violation of 18 U.S.C. § 922(o)) was running concurrently as part of an aggregate term imposed for seven other counts, none of which were implicated by the motion. See Ross, 801 F.3d at 376-77, 382-83. The court held that, given the concurrent nature of the defendant's multiple sentences, he was not in "custody" on the challenged conviction for Section 2255 purposes. See id. at 382-83. Citing Ross, the government posits that, because Nelson's ACCA sentence is running concurrently with sentences imposed on two unchallenged counts, his instant motion cannot effect a change in "custody" as required under Section 2255. (See Doc. 345 at 28-32).

Ross is distinguishable in many respects. The case concerned a challenge to the collateral consequences of an allegedly unlawful conviction. See Ross, 801 F.3d at 382. Nelson, *per contra*, challenges the constitutional consequences of an unlawful sentence. (See Doc. 346 at 6-8). More significantly, the sentence imposed

15

on the disputed count in Ross—ten years' imprisonment—was within the maximum sentence authorized for that count, and it was running concurrently with a ten-year mandatory minimum term not impacted by Ross's motion. Id. at 376-77; see also 18 U.S.C. § 924(a)(2). In other words, the court was certain that Ross's "custody" could not be affected by successful challenge to the machine gun conviction.

The same cannot be said in this case. Nelson's 235-month sentence on Count III exceeds the applicable statutory maximum by 115 months. Compare 18 U.S.C. § 924(a)(2) with id. § 924(e). The government asseverates that Nelson's concurrent sentences on Counts I and II remain intact and lawful. (Doc. 345 at 28-32). This argument ignores that the concurrent sentences on Counts I and II are part and parcel of an aggregate sentencing scheme and are within a Guidelines sentencing range dictated largely by Nelson's armed career criminal designation. Elimination of Nelson's armed career criminal status effectively oppugns the sentence imposed on all three counts of conviction. The concurrent sentence doctrine does not apply to foreclose Nelson's motion.

### E. Relief

The Third Circuit Court of Appeals instructs that when an "interdependent" component of an aggregate sentence is vacated, "[r]esentencing on all counts is warranted." United States v. Ciavarella, 716 F.3d 705, 734 (3d Cir. 2013) (citing United States v. Davis, 112 F.3d 118, 122 (3d Cir. 1997)). District courts throughout the country have invoked this principle—also known as the "sentencing package doctrine"—to resentence defendants whose ACCA status drove their multicount

Guidelines range.[6] When the sentencing package doctrine is applicable, courts "unbundle" the multicount sentencing package and resentence the defendant *de novo*. See Ciavarella, 716 F.3d at 734 (citing Davis, 112 F.3d at 122).

We find this approach to be appropriate here. Nelson's armed career criminal status influenced all aspects of sentencing, including his mandatory minimum and maximum sentencing exposure, his total offense level, his criminal history category, and his ultimate Guidelines sentencing range for all three counts. The sentences imposed on Counts I and II are "interdependent" with the sentence invalidated by Johnson. See Ciavarella, 716 F.3d at 734 (citing Davis, 112 F.3d at 122). *De novo* resentencing on Counts I, II, and III is warranted.

---

[6] See, e.g., Pearson v. United States, No. 2:16-CV-8068, 2017 WL 2834110, at *3-4 (N.D. Ala. June 30, 2017); United States v. Booker, 240 F. Supp. 3d 164, 172-73 (D.D.C. 2017); Harvey v. United States, No. 3:16-CV-1377, 2016 WL 7647039, at *1-2 (N.D. Tex. Dec. 8, 2016), adopted by 2017 WL 36709 (N.D. Tex. Jan. 4, 2017); Burgin v. United States, No. 1:02-CR-88, 2016 WL 3276978, at *1 (S.D. Ohio June 15, 2016); see also United States v. Beckham, 202 F. Supp. 3d 1197, 1202-03 (E.D. Wash. 2016).

## IV. Conclusion

For all of the reasons set forth herein, the court concludes that Nelson is entitled to resentencing *de novo* pursuant to 28 U.S.C. § 2255 and Johnson v. United States, 135 S. Ct. 2551 (2015). An appropriate order shall issue.

         /S/ CHRISTOPHER C. CONNER
         Christopher C. Conner, Chief Judge
         United States District Court
         Middle District of Pennsylvania

Dated:    October 17, 2017